IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIMOTHY G. WILLIAMS,
    Petitioner,

vs.                                      Case No. 3:06cv444/LAC/EMT

WALTER A. McNEIL,[1]
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 15). Petitioner filed a reply (Doc. 19).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 15, Exhibits).[2] On February 28, 2001, Petitioner was charged by

---

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2]Hereafter all references to exhibits in this Report and Recommendation will refer to the exhibits filed by Respondent with his answer (Doc. 15, Exhibits).

information in the Circuit Court for Escambia County, Florida, Case No. 01-0581-CFA with two counts of obtaining a driver's license or identification card by fraud and two counts of uttering a forgery (Ex. A at 1–2). On July 24, 2001, Petitioner entered a written plea agreement whereby he agreed to enter a "straight up" plea of nolo contendere to the charges (*id.* at 17–20). Petitioner was adjudicated guilty and sentenced on September 13, 2001, to concurrent terms of five years of imprisonment, all of which were suspended, and concurrent terms of three (3) years of probation (*id.* at 23–27).

On January 13, 2004, Petitioner was charged in Case No. 04-0126-CFA, with one felony count of theft, one misdemeanor count of resisting an officer without violence, and one misdemeanor count of possession of drug paraphernalia (Ex. A at 5). These charges were also the basis of a violation of probation ("VOP") proceeding in Case No. 01-0581-CFA (*id.* at 36–38).

On April 30, 2004, Petitioner filed a pro se motion to dismiss his court-appointed counsel (Ex. B at 105–06). On May 3, 2004, the trial court conducted a <u>Nelson</u>[3] inquiry and denied the motion (*id.* at 94–106).

On May 10, 2004, Petitioner entered a "straight up" nolo contendere plea to the VOP in Case No. 01-0581-CFA and guilty plea to all three counts in Case No. 04-0126-CFA (Ex. A at 39–71). The same day, he was sentenced to four concurrent terms of five (5) years of imprisonment on the VOP counts, with 354 days of pre-sentence jail credit (*id.* at 64–71). He was sentenced to five (5) years of imprisonment on the felony petit theft count in Case No. 04-05126CFA, to run consecutively to the five-year sentences imposed in the VOP case and with credit for seven (7) days (*id.* at 68). He was sentenced to one (1) year of imprisonment on each of the misdemeanor counts, to run consecutively to each other and consecutively to the sentence imposed on the felony count (*id.* at 69–70). Thus, Petitioner's total sentence in both cases was twelve (12) years.

---

[3]<u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973) (where defendant, before commencement of trial, requests discharge of his court-appointed counsel, trial judge should make an inquiry of defendant as to reason for request and, if incompetency of counsel is assigned as reason, should make a sufficient inquiry of defendant and his appointed counsel to determine whether there is cause to believe that counsel is not rendering effective assistance to defendant, and if reasonable cause for such belief appears, trial judge should make a finding to that effect on record and appoint substitute counsel who should be allowed adequate time to prepare defense, but if no reasonable basis for such belief appears, trial judge should so state on record and advise defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute).

Petitioner appealed the judgment to the Florida First District Court of Appeals ("First DCA"). Petitioner's counsel filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that he was unable to argue in good faith that reversible error occurred in the trial court which would support reversal of the conviction or sentence (Ex. C). Petitioner filed a pro se brief (Ex. D). On April 11, 2005, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing May 9, 2005 (Exs. E, F). Williams v. State, 900 So. 2d 563 (Fla. 1st DCA 2005) (Table).

On October 24, 2005, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. G at 1–20). The trial court summarily denied the motion in a written opinion rendered on March 6, 2006 (*id.* at 21–61). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on July 10, 2006, with the mandate issuing August 7, 2006 (Exs. J, K). Williams v. State, 935 So. 2d 505 (Fla. 1st DCA 2006) (Table).

Petitioner filed the instant federal habeas action on October 9, 2006 (Doc. 1 at 11).[4]

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[4]The page references used in this Report and Recommendation reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No. 3:06cv444/LAC/EMT

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S.

---

[5]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."

Case No. 3:06cv444/LAC/EMT

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 496 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, — U.S. — 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 496 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

> Ground One: "Counsel failed to provide the petitioner his federally protected right to effective assistance of counsel as contemplated by the 6th Amendment to the U.S. Const., by misadvising him as to the penalty he would be exposed to had he lost at trial."
>
> Ground Two: "Counsel denied the petitioner his federally protected rights to effective assistance, his right to a fair trial, and his right to due process as outlined in the 6th, 5th, and 14th Amendments to the U.S. Const., by failing to move the court to compell [sic] the State to correct an erroneous scoresheet provided the petitioner in discovery."[6]

Petitioner claims that his counsel performed deficiently by advising him prior to entering his plea that if he went to trial on the VOP and new charges, he could be sentenced to a maximum of twenty-seven (27) years of incarceration (Doc. 1 at 4, 6–9). Petitioner states the maximum sentence the judge could legally impose was only twelve (12) years, since the four five-year sentences for the VOP charges had to run concurrently not consecutively. Petitioner states counsel provided him a copy of the sentencing scoresheet, which showed a maximum sentence of twenty-seven (27) years, without advising him that the scoresheet was incorrect. Petitioner further states counsel advised him that if he entered a plea, the judge would likely show mercy at sentencing by imposing less than the statutory maximum; but if Petitioner took the cases to trial and lost, the judge would likely sentence him to the maximum (Doc. 17 at 2–6). Petitioner asserts if he had known his sentence exposure was only twelve (12) years, he would have taken his case to trial (Doc. 1 at 6–9; Doc. 17 at 2–6).

Respondent concedes that Petitioner exhausted these claims in the state courts by raising them in his Rule 3.850 motion and in his appeal of the trial court's order denying the motion (Doc. 15 at 5–6). Respondent contends the state court's denial of the claims was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of Supreme Court law (*id.* at 9–13). Respondent asserts that according to Florida Statutes § 775.082(3) and (4), the combined statutory maximum that Petitioner faced for his five third-degree felony counts and two first-degree misdemeanor counts was twenty-seven (27) years—five years for each third-degree felony and one year for each first-degree misdemeanor (*id.* at 10). However, pursuant to Eldridge v. Moore, 760 So. 2d 888, 889 (Fla. 2000), because the trial court had originally imposed a "true split sentence" in Case No. 01-0581, the most severe sentence that the court could actually

---

[6]The court has consolidated Grounds One and Two for organizational purposes.

impose upon sentencing for the VOP was to "unsuspend" the previously suspended five-year prison term (*id.*). Therefore, the most that the court could have sentenced Petitioner to was twelve (12) years (*id.*).

1. Clearly Established Supreme Court Law

When a defendant challenges a guilty plea based upon allegations of ineffective assistance of counsel, the two pronged standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies. The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

Case No. 3:06cv444/LAC/EMT

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advise is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without

more, is insufficient to establish prejudice under Strickland. *See* Diaz, 930 F.2d at 835; *see also* Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

        2.        Federal Review of State Court Decision

Petitioner raised both claims of ineffective assistance of counsel in his Rule 3.850 motion (Ex. G at 3–8). In the court's written opinion denying the motion, the trial court determined that, as a matter of Florida law, the combined statutory maximum for all of the offenses with which Petitioner was charged was twenty-seven (27) years, which was accurately reflected in Petitioner's sentencing scoresheet (*id.* at 22, 46). The court further determined that Petitioner's maximum sentence exposure was limited to twelve (12) years by Petitioner's original sentence in Case No. 01-0581, that is, a suspended sentence of only five (5) years total on all counts (*id.* at 21). The court found as fact that Petitioner was informed at the plea hearing that he faced a statutory maximum of twenty-seven (27) years for all of the charges, and Petitioner entered his plea knowing that the sentencing scoresheet reflected a maximum sentence of twenty-seven (27) years (*id.* at 22). The court concluded that Petitioner's assertion that had he known the maximum sentence exposure was twelve (12) years, he would not have entered a plea and would have proceeded to trial was illogical, and Petitioner failed to clarify how this discovery affected his plea decision (*id.*). Therefore, Petitioner failed to demonstrate he was prejudiced by counsel's alleged error (*id.*).

The state court did not cite a state or federal case for the legal standard governing Petitioner's ineffective assistance of counsel claims, but the standard applied by the court with regard to Petitioner's claims was whether Petitioner demonstrated that his counsel committed error, and that the error affected the outcome of the plea process. This rule does not contradict the Hill and Strickland standards; rather, it is consistent with those precedents. *See* Yordan v. Dugger, 909 F.2d 474, 478–79 (11th Cir. 1990) (to prevail on merits of claim of involuntary plea due to misrepresentations of counsel, habeas petitioner must prove: (1) that the claimed misinformation was given to him by his attorney; (2) that his counsel's performance fell below an objective standard

of reasonableness; and (3) that he would not have pleaded guilty and would have insisted on going to trial had he been properly informed by counsel); *see also* Early, 537 U.S. at 8 (a state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775–76 (11th Cir. 2003) (same). Furthermore, the state court did not arrive at a result different from Supreme Court precedent on facts materially indistinguishable from a decision of the Supreme Court. Therefore, the state court decision was not contrary to clearly established Supreme Court law.

Additionally, this court must defer to the state court's determinations of state law issues, including the state court's determinations that the combined statutory maximum for all of Petitioner's offenses was twenty-seven (27) years, and that Petitioner's maximum sentence exposure was limited to twelve (12) years by Petitioner's original sentence in Case No. 01-0581. Although an ineffective assistance of counsel claim is a federal constitutional claim, which the court considers in light of the clearly established rules of Strickland, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (emphasis added) (superseded on other grounds); *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them . . ." (quotation and omitted)). Put another way, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992); Hunt v. Tucker, 93 F.3d 735, 737 (11th Cir. 1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation).

With regard to Petitioner's claim that defense counsel performed deficiently by failing to object to the sentencing scoresheet on the ground that it incorrectly stated the combined statutory maximum for all of his offenses as twenty-seven (27) years, the state court decided that the scoresheet reflected the correct statutory maximum according to Florida law. In light of this determination, defense counsel did not have a meritorious basis for seeking correction of the

scoresheet. Therefore, Petitioner failed to demonstrate that the state court's denial of this ineffective assistance of counsel claim was an unreasonable application of Strickland.

      With regard to Petitioner's claim that defense counsel provided ineffective assistance by failing to advise him that the maximum sentence the judge could legally impose was twelve (12) years instead of twenty-seven (27), Petitioner has failed to establish that the state court's determination that he failed to show he was prejudiced by the alleged error was unreasonable. Petitioner's stated reason for entering a plea, that is, his belief that if he did so, the court would show him mercy by imposing less than the maximum sentence, but if he went to trial and lost, the court would impose the maximum sentence, suggests that Petitioner would not have risked receiving the maximum sentence regardless of whether it was twenty-seven (27) years or twelve (12). Indeed, objective evidence in the state court record suggests that throughout the case, Petitioner was pursuing a plea with the lowest permissible sentence of a non-prison sanction, as stated on his sentencing scoresheet, as his desired outcome. For example, during the Nelson hearing, one of Petitioner's complaints about defense counsel's representation was that counsel was not communicating Petitioner's proposed counter-offer of a plea with a non-prison sentence to the prosecutor (*see* Ex. B at 97). Although the prosecutor apparently rejected the counter-offer (*see id.* at 97, 100, 103), Petitioner continued to pursue a non-prison sentence by asking the judge at the plea and sentencing hearing to impose a non-prison sentence (*see* Ex. A at 49–51). Nothing in the record supports Petitioner's after-the-fact assertion that his decision to plead guilty was determined by his belief as to the number of years that comprised the potential maximum sentence. Additionally, as the sentencing judge was imposing sentence for the VOP, the judge stated that he was "limited" by the original sentence on those charges to "unsuspending" the concurrent five-year sentences (*see id.* at 54–55), and despite receiving this information, the very information that Petitioner claims would have caused him to forgo a plea and proceed to trial, Petitioner gave no indication throughout the remainder of the hearing that he was having second thoughts about entering a plea or that he wished to withdraw it (*see id.* at 55–58). The evidence in the record thus indicates that Petitioner desired to relinquish his right to a trial for the possibility of a sentence below the maximum, regardless of what the maximum actually was, and it undermines Petitioner's after-the-fact assertion that the amount of the maximum sentence was the determinative factor in his decision to enter a "straight

up" plea and forgo a trial. In light of this evidence, and the absence of any reasonably specific, non-conclusory facts or objective evidence in the record suggesting that Petitioner placed particular emphasis on the number of years of the maximum sentence in deciding to enter a plea, Petitioner has failed to establish that the state court's determination that he failed to show he was prejudiced by counsel's alleged error was an unreasonable application of Strickland. Accordingly, Petitioner is not entitled to federal habeas relief on either Ground One or Ground Two.

> Ground Three: "Counsel denied the petitioner his federally protected right to effective assistance, his right to a fair trial, and his right to due process as contemplated by the 6th, 5th, and 14th Amendment [sic] to the U.S. Const., by revealing to the State confidential and privledged [sic] information material to the petitioner's defense at trial."

Petitioner additionally contends his plea was involuntary because defense counsel, Mr. Russell, revealed confidential, privileged information that was material to his defense during the Nelson hearing (Doc. 1 at 5, 9–10; Doc. 19 at 6). Petitioner states that during the hearing he told the trial judge that one of the reasons he wanted Mr. Russell discharged from the case was Mr. Russell's failure to take a written statement from him concerning his version of the events underlying the charges (Doc. 1 at 5; Doc. 19 at 6). When the trial judge inquired of Mr. Russell regarding Petitioner's complaint, Mr. Russell responded, "I don't have in my files any notes that he told me he wasn't there, it was somebody else, or he was somewhere else." (Doc. 1 at 10; Doc. 19 at 6–7). Petitioner asserts counsel performed deficiently by revealing that Petitioner had no defense (Doc. 1 at 10; Doc. 19 at 7). He states counsel's error compelled him to enter a plea because if he had taken the case to trial after counsel had told the judge that Petitioner admitted guilt, the judge more than likely would have imposed the maximum sentence, but if he entered a plea, the judge more than likely would have imposed less than the maximum (Doc. 19 at 7).

Respondent concedes that Petitioner exhausted this claim in the state courts by raising it in his Rule 3.850 motion and the appeal of the trial court's denial of the motion (Doc. 15 at 5–6). Respondent contends the state court decision denying the claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of Supreme Court law (*id.* at 14–16).

        1.        Clearly Established Supreme Court Law

The federal standard for evaluating a challenge to a guilty plea based upon ineffective assistance of counsel is set forth *supra*.

2. Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of counsel in his Rule 3.850 motion (Ex. G at 9–10). In the written opinion denying Petitioner's motion, the trial court determined that Mr. Russell's conduct was not improper because the information he disclosed was narrowly tailored to address Petitioner's allegation of attorney incompetence (*id.* at 22).

According to the transcript of the Nelson hearing, one of the grounds for Petitioner's seeking to discharge Mr. Russell as defense counsel was Mr. Russell's failure to obtain a written statement from him regarding his version of the events underlying the charges (*see* Ex. B at 98, 101–02). At the hearing, Petitioner provided the following testimony in support of his claim:

> THE DEFENDANT: Also, I got one more thing, Your Honor. And, also, he has not—we are supposed to be ready for trial, and he has not even taken my statement of what has happened.
>
> THE COURT: Okay.
>
> THE DEFENDANT: Not even asked me what happened, has not took [sic] a written statement, and I don't see how he can be prepared for trial.
> . . . .
> THE COURT: During the time that you've talked with him, did you—you say he hasn't taken your statement. Did you offer him your side of what happened in this case, Mr. Williams? You are charged with felony theft, felony petit theft, which means I guess you got some prerequisites that put it there.
>
> Did you ever offer to him, hey, I'm not guilty of this because I wasn't there or did you ever tell him that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Well, I thought you said a minute ago that you never gave him a statement of your side of it.
>
> THE DEFENDANT: He hasn't took [sic] a written statement. He just—
>
> THE COURT: Oh, it's not in writing.

>    THE DEFENDANT: He hasn't given any—
>
>    THE COURT: But you told him verbally your side of it.
>
>    THE DEFENDANT: Not in depth.
>
>    THE COURT: Well, what was preventing you from giving your version in depth to him?
>
>    THE DEFENDANT: Him just showing me plea agreements and what I could get—
>
>    THE COURT: I see.
>
>    THE DEFENDANT: —and stuff like that.

(Ex. B at 98, 101–02). The trial court then inquired of Mr. Russell regarding this allegation:

>    THE COURT: Okay. Give me your account of him saying that you are refusing to let him give you in detail his version of what happened that would be exculpatory.
>
>    MR. RUSSELL: In my initial visit with Mr. Williams, Judge, I would have went [sic] over the police report with him that we had in our file and I would have asked him what is your side of the story. I do that as a matter of standard procedure. And I don't have in my file any notes that he told me he wasn't there, it was somebody else, or he was somewhere else.

(*id.* at 104–05).

Counsel's disclosure of the contents of his conversation with Petitioner regarding Petitioner's version of the events underlying the charges was not unreasonable. A party "waives its attorney-client privilege when it injects into [the] litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." Johnson v. Alabama, 256 F.3d 1166, 1178 (11th Cir. 2001) (internal quotation and citation omitted). By alleging that his attorney provided ineffective assistance by failing to obtain his version of events, Petitioner put at issue—and thereby waived—any privilege that might have applied to the contents of his conversations with counsel regarding his version of the events. In light of Petitioner's waiver of his attorney-client privilege on the subject of whether counsel inquired as to his side of the story, defense counsel did not perform unreasonably by disclosing the contents of his conversation with

Petitioner on that subject. Therefore, Petitioner has failed to demonstrate that the state court's rejection of this claim was contrary to or an unreasonable application of Strickland.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 20th day of October 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**